

BD
ORIGINAL

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

JUN 6 2005

CLERK, U.S. DISTRICT COURT
By _____
Deputy

| | |
|---|---|
| LASANDRA MADDEN,<br>Individually, and on Behalf<br>of LABREA WILLIAMS, a minor child<br>Plaintiff,<br><br>v.<br><br>WYETH, d/b/a WYETH, INC., f/k/a<br>AMERICAN HOME PRODUCTS<br>CORPORATION; WYETH CONSUMER<br>HEALTHCARE, AN UNINCORPORATED<br>DIVISION OF WYETH, f/k/a WHITEHALL-<br>ROBINS HEALTHCARE; & WHITEHALL<br>LABORATORIES, INC.<br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ |

CIVIL ACTION No. 3:03-CV-0167-BD

---

## WYETH'S BRIEF IN SUPPORT OF RESPONSE TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND OBJECTIONS TO PLAINTIFF'S EVIDENCE

---

Joseph D. Cohen
State Bar No. 04508369
Charles S. Baker
State Bar No. 01566200
PORTER & HEDGES, L.L.P.
1000 Main Street, 36th Floor
Houston, Texas 77002-6336
Phone: 713.226.6000
Fax:    713.228.1331

and

William D. Sims, Jr.
State Bar No. 18429500
State Bar No. 00794685
VINSON & ELKINS, L.L.P
2001 Ross Avenue, Suite 3800
Dallas, Texas 75201-2975
Phone: 214.220.7700
Fax:    214.220.7716

**ATTORNEYS FOR DEFENDANTS**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................................iii

SUMMARY JUDGMENT EVIDENCE ...................................................................................1

I.   PLAINTIFF IS IMPROPERLY USING RULE 56 TO SEEK A PIECEMEAL
     ADJUDICATION OF FACT ISSUES..............................................................................2

II.  SUMMARY JUDGMENT FOR PLAINTIFF IS NOT APPROPRIATE ON THE
     WARNINGS CLAIMS.....................................................................................................2

     A.   Statement of Genuine Issues Relevant to the Warnings Claims. ..........................3

     B.   Plaintiff's "Statement of Facts Regarding Failure to Warn" Is Inaccurate
          and Irrelevant to Any Legal Issue Articulated By Plaintiff. ................................7

     C.   Plaintiff's Foreign Labeling Claims Do Not Support Summary Judgment. ...........9

     D.   Plaintiff's Citizen Petition/FDA Announcement Argument Does Not
          Entitle Her to Summary Judgment. ....................................................................13

     E.   Plaintiff Has Failed to Establish the Absence of a Material Fact Issue
          Regarding All Elements (or Even a Single Element) of Her Warnings
          Claims. ...............................................................................................................15

III. PLAINTIFF IS NOT ENTITLED TO PARTIAL SUMMARY JUDGMENT ON
     THE ISSUE OF CAUSATION.....................................................................................17

     A.   Statement of Genuine Issues Relevant to Causation. .........................................17

     B.   Plaintiff Has Not Established General Causation as a Matter of Law..................19

     C.   Plaintiff Has Not Established Specific Causation as a Matter of Law. ................23

CERTIFICATE OF SERVICE..................................................................................................30

## TABLE OF AUTHORITIES

### Cases

*Arado v. Gen. Fire Extinguisher Corp.,*
    626 F. Supp. 506 (N.D. Ill. 1985) ................................................................. 2

*Brooks v. Howmedica,*
    273 F.3d 785 (8th Cir. 2001) (en banc) ......................................................... 12

*Brookshire Brothers, Inc. v. Smith,*
    2004 WL 1064776 (Tex. App.—Houston [1st Dist.] 2004, n.p.h.) ................ 17

*Chandler v. Gene Messer Ford, Inc.,*
    81 S.W.3d 493 (Tex. App.—Eastland 2002, pet. denied) .............................. 14

*Christopherson v. Allied Signal Corp.,*
    939 F.2d 1106 (5th Cir. 1991) ....................................................................... 23

*Daubert v. Merrell Dow Pharm.,*
    509 U.S. 579 (1993) ...................................................................................... 26

*David v. Duplantis,*
    448 F.2d 918 (5th Cir. 1971) ......................................................................... 24

*Deviner v. Electrolux Motor, AB,*
    844 F.2d 769 (11th Cir. 1988) ....................................................................... 11

*Flock v. Scripto-Tokai Corp.,*
    2001 WL 34111723 (S.D. Tex. 2001) ...................................................... 9, 21

*Fontenot v. Upjohn Co.,*
    780 F.2d 1190 (5th Cir. 1986) ....................................................................... 17

*Geiserman v. MacDonald,*
    893 F.2d 787 (5th Cir. 1990) ......................................................................... 24

*Gulf South Insulation v. U.S. Consumer Product Safety Com'n,*
    701 F.2d 1137 (5th Cir. 1983) ....................................................................... 19

*Hamburger v. State Farm Mut. Auto. Ins. Co.,*
    361 F.3d 875 (5th Cir. 2004) ......................................................................... 25

*Harrison v. Wyeth Labs. Div. of Am. Home Prods. Corp.,*
    510 F.Supp. 1 (E.D. Penn. 1980) .................................................................. 12

*Hodges v. U.S.,*
    597 F.2d 1014 (5th Cir. 1979) ....................................................................... 24

*Hurt v. Coyne Cylinder Co.*,
    956 F.2d 1319 (6th Cir. 1992) ....................................................................... 11

*Knight v. Kirby Inland Marine, Inc.*,
    363 F. Supp. 2d 859 (N.D. Miss. 2005) ........................................................ 28

*Lithuania Commerce Corp., Ltd. v. Sara Lee Hoisery*,
    177 F.R.D. 245 (D. N.J. 1997), *vacated in part on other grounds*, 179 F.R.D. 450
    (D. N.J. 1998)................................................................................................... 27

*Lodge Hall Music, Inc. v. Waco Wrangler Club, Inc.*,
    831 F.2d 77 (5th Cir. 1987) .......................................................................... 26

*Merrell Dow Pharm., Inc. v. Havner*,
    907 S.W.2d 535 (Tex. App.—Corpus Christi 1994), *rev'd on other grounds*, 953
    S.W.2d 706 (Tex. 1997) ....................................................................... 17, 19, 20

*Metro Ford Truck Sales, Inc. v. Ford Motor Co.*,
    145 F.3d 320 (5th Cir. 1998) ........................................................................ 25

*Musser v. Gentiva Health Servs.*,
    356 F.3d 751 (7th Cir. 2004) ........................................................................ 25

*Notch v. Aerospatiale*,
    2003 WL 21356790 (N.D. Tex. 2003) ...................................................... 9, 21

*Nye v. Roberts*,
    159 F.Supp.2d 207 (D. Md. 2001) .................................................................. 2

*Provident Life & Acc. Ins. Co. v. Goel*,
    274 F.3d 984 (5th Cir. 2001) .......................................................................... 9

*Reed v. Iowa Marine & Repair Corp.*,
    16 F.3d 82 (5th Cir. 1994) ............................................................................ 25

*Richardson v. Richardson-Merrell, Inc.*,
    649 F. Supp. 799 (D. D.C. 1986) , *aff'd*, 857 F.2d 823 (D.C. Cir. 1988) ........................ 19

*Robins v. Kroger Co.*,
    982 S.W.2d 156 (Tex. App.—Houston [1st Dist.] 1998, pet. denied) ................................ 3

*Savariego v. Melman*,
    2002 WL 1788012 (N.D. Tex. 2002) ............................................................ 14

*Sherry v. Massey-Ferguson, Inc.*,
    1997 WL 480893 (W.D. Mich. 1997) .......................................................... 11

*St. Clair v. Johnny's Oyster & Shrimp, Inc.*,
    76 F.Supp.2d 773 (S.D. Tex. 1999) ............................................................ 13

*Stewart v. Janssen Pharmaceutica, Inc.*,
    780 S.W.2d 910 (Tex. App.—El Paso 1989, writ denied) ............................ 16

*Tews v. Husqvarna, Inc.*,
    390 N.W.2d 363 (Minn. App. 1986) ......................................................... 12

*Tolliver v. Federal Republic of Nigeria*,
    265 F.Supp.2d 873 (W.D. Mich. 2003) ..................................................... 14

*Toshiba Int'l Corp. v. Henry*,
    152 S.W.3d 774 (Tex. App.—Texarkana 2004, no pet.)................................. 3

*Trost v. Trek Bicycle Corp.*,
    162 F.3d 1004 (8th Cir. 1998) .................................................................. 25

*Wilson v. Zapata Off-Shore Co.*,
    939 F.2d 260 (5th Cir. 1991) ................................................................... 26

## Rules and Statutes

21 C.F.R.
    § 314(k) ........................................................................................... 8
    § 314.50 ........................................................................................ 4, 8
    § 314.80(a) ...................................................................................... 8
    § 314.81 ........................................................................................ 4, 8

FEDERAL RULES OF CIVIL PROCEDURE
    Rule 16(b) ...................................................................................... 24
    Rule 26 .......................................................................................... 25
    Rule 26(a)(2)(A) ............................................................................... 25
    Rule 26(a)(2)(B) ............................................................................... 25
    Rule 37(c)(1) ................................................................................... 25
    Rule 56(a) ........................................................................................ 2

FEDERAL RULES OF EVIDENCE
    Rule 401 ............................................................................... 6, 7, 10, 11
    Rule 402 ............................................................................... 6, 7, 10, 11
    Rule 403 ....................................................................................... 11
    Rule 604 ....................................................................................... 11
    Rule 702 ....................................................................................... 25
    Rule 801 .................................................................................... 7, 14
    Rule 802 .................................................................................... 7, 14
    Rule 803(6) .................................................................................... 27
    Rule 805 ....................................................................................... 26
    Rule 901 ....................................................................................... 11

Rule 1004 ................................................................................................... 10, 26

## Other Authorities

REFERENCE MANUAL ON SCIENTIFIC EVIDENCE ........................................................ 29

TEXAS PATTERN JURY CHARGES, PJC 71.5 (2003) ........................................................ 3

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LASANDRA MADDEN,<br>Individually, and on Behalf<br>of LABREA WILLIAMS, a minor child | §<br>§<br>§<br>§ | |
| Plaintiff, | § | CIVIL ACTION No. 3:03-CV-0167-BD |
| | § | |
| v. | §<br>§ | |
| WYETH, d/b/a WYETH, INC., f/k/a<br>AMERICAN HOME PRODUCTS<br>CORPORATION; WYETH CONSUMER<br>HEALTHCARE, AN UNINCORPORATED<br>DIVISION OF WYETH, f/k/a WHITEHALL-<br>ROBINS HEALTHCARE; & WHITEHALL<br>LABORATORIES, INC. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | |
| Defendants. | §<br>§ | |

**WYETH'S BRIEF IN SUPPORT OF RESPONSE TO PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT AND OBJECTIONS TO PLAINTIFF'S EVIDENCE**

TO THE HONORABLE UNITED STATES MAGISTRATE JUDGE KAPLAN:

COME NOW the Wyeth Defendants and would respectfully show the Court that

Plaintiff's partial motion for summary judgment should be denied in its entirety.

**SUMMARY JUDGMENT EVIDENCE**

Wyeth opposes summary judgment for the Plaintiff and relies on the following evidence,

true and correct copies of which are included in Wyeth's Appendix[1] in Response to Plaintiff's

Motion for Partial Summary Judgment, filed contemporaneously with Wyeth's Response and

this Brief, and incorporated herein by reference: **App. 1** Deposition of Dr. Roujeau, M.D.; **App.**

**2** Deposition of Dr. Stern, M.D.; **App. 3** Deposition of Dr. Shulman, M.D.; **App. 4** Declaration

---

[1] Tabs 1, 2, 3, 7, 8, and 9 of the Appendix are filed separately under seal, pursuant to the parties' agreement.

1

of Dr. Stern; **App. 5** Declaration of Dr. Stern; **App. 6** Declaration of Dr. Waymack, M.D.; **App. 7** Deposition of Dr. Waymack, M.D.; **App. 8** Deposition of Dr. Ewell, Ph.D.; **App. 9** Deposition of Dr. Berlin, M.D.; **App. 10** Label for OTC Children's Advil; **App. 11** Declaration of Dr. Ashraf, Ph.D.

## I. PLAINTIFF IS IMPROPERLY USING RULE 56 TO SEEK A PIECEMEAL ADJUDICATION OF FACT ISSUES.

Plaintiff filed a motion for partial summary judgment (herein "Mtn.") that improperly seeks determination on an element of her claims, but Plaintiff does not attempt to dispose of any claim in its entirety. Fed. R. Civ. P. 56(a) provides: "A party seeking to recover upon a claim, counterclaim, or cross-claim . . . may . . . move with or without supporting affidavits for a summary judgment in the party's favor upon all or a part thereof." FED. R. CIV. P. 56(a). The "all or a part thereof" language authorizes the granting of an action on only some claims in a multiple claim action, but not when the motion does not dispose of any claim in its entirety. *See, e.g., Nye v. Roberts*, 159 F.Supp.2d 207, 210, n. 2 (D. Md. 2001), *vacated on other grounds*, 47 Fed. Appx. 247 (4th Cir. 2002); *Arado v. Gen. Fire Extinguisher Corp.*, 626 F. Supp. 506, 608-09 (N.D. Ill. 1985). Rule 56(a) does not allow "piecemealing" of a single claim. *Arado*, 626 F. Supp. at 509. Plaintiffs cannot use Rule 56(d) to evade the restrictions in Rule 56(a). Rule 56(d) does not authorize independent motions to establish certain facts as true; it serves as a basis for the court to salvage some constructive result from the judicial effort expended in denying a proper summary judgment motion. *Nye*, 159 F.Supp.2d at 210; *Arado*, 626 F. Supp. at 509.

## II. SUMMARY JUDGMENT FOR PLAINTIFF IS NOT APPROPRIATE ON THE WARNINGS CLAIMS.

A plaintiff in a marketing defect case must prove that a marketing defect existed at the time the product left the defendant's possession, and that the defect was the producing cause of the injury. *See* Texas Pattern Jury Charges, PJC 71.5 (2003). A "marketing defect" is defined as

2

a "failure to give adequate warnings of the product's dangers that were known or by the application of reasonably developed human skill and foresight should have been known. . . which failure rendered the product unreasonably dangerous as marketed." *Id.*; *see also Robins v. Kroger Co.*, 982 S.W.2d 156, 160 (Tex. App.—Houston [1st Dist.] 1998, pet. denied). A negligent failure to warn claim requires the plaintiff to first demonstrate a defect in the product. *Toshiba Int'l Corp. v. Henry*, 152 S.W.3d 774, 784-85 (Tex. App.—Texarkana 2004, no pet.).

In support of summary judgment on her warnings claims,[2] Plaintiff makes two legal arguments, neither of which entitle her to summary judgment. First, citing evidence that does not support her argument, Plaintiff claims that in foreign countries, Wyeth warns consumers directly about SJS in their OTC Children's Advil labeling, and contends that the failure to provide the same warning in the United States OTC Children's Advil label constitutes negligence[3] — despite her own expert's admission that regulations in foreign countries are different from U.S. regulations. Second, Plaintiff argues that a Citizen's Petition, filed by Plaintiff and others with the FDA three years after LaBrea Williams ingested Children's Advil, and which the FDA has stated is "still under review," and/or a recent FDA announcement that NSAID manufacturers should warn of "potential skin disorders," somehow establishes the inadequacy of the 2002 label at issue here. Plaintiff offers no law in support of these claims and these bald assertions do not entitle Plaintiff to summary judgment.

## A.    Statement of Genuine Issues Relevant to the Warnings Claims.

Many of Plaintiff's "undisputed" and "disputed facts" relating to warnings are inaccurate, unsupported, or irrelevant.

---

[2] While the title of Plaintiff's motion refers only to her "Negligent Failure to Warn" claim, the text of the motion refers to a strict liability failure to warn claim. Wyeth will address both in this brief.

[3] Plaintiff does not contend that the foreign labeling argument entitles her to summary judgment on her strict liability failure to warn claim. *See* Mtn. at 18-19.

*"Undisputed Fact": OTC labeling requirements.*   Plaintiff fails to acknowledge that OTC drug labeling requirements are different from prescription drug labeling.  The FDA requires that labeling for OTC drugs be written in language that is understandable to non-medical persons.  App. 6 at 327-28, ¶ 15; Over-the-Counter Human Drugs, Labeling Requirements, 64 Fed. Reg. 13254, 13258 (March 17, 1999).  Data from FDA-conducted studies, as well as a study conducted by Wyeth, demonstrates that patients are more likely to comprehend, follow and specifically read labels with general warnings, which are appropriate and effective for the lay public, as opposed to specific warnings.  64 Fed. Reg. at 13257; App. 6 at 327-28, ¶ 15.

*"Undisputed Fact": Reporting "any articles."*   Plaintiff incorrectly states that Wyeth was required to survey the scientific literature periodically and report to the FDA "any" articles affecting the safety of Children's Advil.  Mtn. at 5.  The FDA only requires that pertinent and relevant literature be submitted.  21 CFR §§ 314.50, 314.81; App. 6 at 326, ¶ 7; App. 7 at 378-80, 388-89.  Drug manufacturers are not required to submit "all" literature relating to their products in all marketing applications and postmarketing updates.  *Id.*

*"Undisputed Fact": Review of Literature at Wyeth.*   Plaintiff states that between 1995 and 2000, there was "no one person" at Wyeth assigned the task of reviewing literature affecting the safety and effectiveness of OTC Children's Advil (Mtn. at 5), incorrectly implying that "no one" was assigned the task.  From 1996 to 2000, the therapeutic team leaders, consisting of members from different areas of Wyeth Consumer Healthcare, had that responsibility.  App. 8 at 467-68, 470.  The library ran database searches of the literature and prepared bibliographies that were reviewed by the therapeutic team leaders.  App. 8 at 432, 467-68.  If a case was found, the team had the responsibility to report it to the FDA.  *Id.*

*"Undisputed Fact": SJS and the "label for OTC Children's Advil in Europe."*   Plaintiff

contends that it is undisputed that after conducting a safety review of reports of SJS/TEN associated with Children's Advil and Advil, "Wyeth added SJS to the label for OTC Children's Advil in Europe" but not in the U.S., and cites the following deposition testimony of Dr. Berlin:

> Q.   Is it true that as a result of a safety review conducted by Wyeth, that you added SJS to the SMPC in Europe for Children's Advil, but you did not add it to the label of over-the-counter Children's Advil in the US?
>
> A.   As far as that statement goes, it's true . . .

Mtn. at 5, n. 22. This is far from a disputed fact. Plaintiff fails to quote the entire answer:

> A:   As far as that statement goes, it's true.  But we did -- *the implication is that we added it to the label of the OTC product in Europe, which we did not* –

App. 9 at 500 (emphasis added).  Dr. Berlin's entire answer (which Plaintiff omitted) references his prior testimony in the same deposition where he made it abundantly clear that in Europe, the SJS information was provided to physicians, not directly to the consumer.  Dr. Berlin explained that in Europe, labeling for OTC drugs is characterized by: (1) SMPC, or summary of medical product characteristics, which is directed to physicians, and is not distributed with the OTC product to consumers; and (2) PIL, or patient information leaflet, which is provided to the consumer.  App. 9 at 499-501, 546-47.  Dr. Berlin testified that the recommendation was made to add SJS to the SMPC.  App. 9 at 499-500.  As Dr. Berlin explained, informing European physicians of SJS as a potential adverse event through an OTC product's SMPC is the equivalent of directing prescription drug warnings to U.S. physicians.  *Id.* at 499-501.  The fact that Plaintiff "disagrees" that the SMPC is directed at physicians and is not included with the OTC label (*see* App. 9 at 500; Mtn. at 5 n. 22), does not give Plaintiff license to treat the foreign labeling issue as an "undisputed fact."

  *"Disputed Fact":   Report of two "arguable" SJS cases.*   Plaintiff states that in connection with the Children's Analgesic Medicine Project (CAMP study), "Wyeth failed to

report to the healthcare community that it had two SJS cases arguably associated with Children's Advil during CAMP, and in fact misrepresented to the FDA and the healthcare community[4] that there were no SJS cases related to CA reported in the study." Mtn. at 10. Those two cases were reported to the FDA. The FDA medical review officer reviewing the NDA for Children's Advil prescription to OTC reviewed the two cases, discussed them in her review, and concluded that Children's Advil was safe, effective and appropriate for an OTC switch. App. 7 at 404.[5]

*"Disputed Fact": FDA's "recognition" that Wyeth failed to report.* Plaintiff states "[n]or has Wyeth reported to the FDA repeated references to the association between Children's Advil and SJS and TEN. . . This situation was recognized by the FDA this past week in their order requesting Wyeth and other NSAID manufacturers to add serious skin reactions to their warning label." Mtn. at 10, citing Plaintiff's Att. 1. The assertion that the FDA "recognized" that Wyeth failed to report "anything" is false; the FDA's announcement makes no such finding, and Plaintiff overstates the FDA's actions. *See* Plaintiff's Att. 1*; see also* section III(D), *infra.*

*"Disputed Fact": National Kidney Foundation/Renal Toxicity Warnings.* Plaintiff references an irrelevant editorial authored by the National Kidney Foundation (not peer-reviewed literature), calling for renal side effect and renal toxicity warnings on OTC Children's Advil. As Plaintiff has no renal failure claim here, these references are irrelevant. FED. R. EVID. 401, 402.

*"Disputed Fact": The June 11, 1991 letter.* Plaintiff cites as Att. 14 "Letter from FDA CDER to American Home Products, June 11, 1991," relating to statements the FDA allegedly made to Wyeth and McNeil. First, the letter is not a "letter from FDA," but from American Home Products to the FDA. Second, the letter with attachment are objectionable as hearsay and

---

[4] Adverse events are reported to the FDA, not the "healthcare community."

[5] Moreover, in his deposition, Wyeth's FDA expert Dr. Waymack testified that it is doubtful that either of these two cases was an SJS case because: (1) in one, there was no record that the patient ever developed blisters, and SJS is characterized by the blistering when the epidermis separates from the dermis; and (2) in the other case, the patient was never hospitalized and the general course of treatment for SJS involves hospitalization. App. 7 at 403.

hearsay within hearsay.  FED. R. EVID. 801, 802; Wyeth's Response to Plaintiffs' Motion for

Summary Judgment ("Response") at 6.

**B.    Plaintiff's "Statement of Facts Regarding Failure to Warn" Is Inaccurate and Irrelevant to Any Legal Issue Articulated By Plaintiff.**

***Wyeth did not fail to submit required "scientific literature" to the FDA in connection***

***with its OTC Children's Advil submissions.***  Plaintiff relies on four Tables contained in the

report of Plaintiff's expert Dr. Nelson in connection with his discussion of causation issues.

Mtn. at 13-16.   Largely, these Tables have nothing to do with whether Wyeth submitted

scientific literature to the FDA, and even a cursory review of the Tables shows that half of the

entries are not "scientific literature."[6]  Plaintiff repeatedly states that the four Tables reflect

"literature" that should have been, but was not, submitted to the FDA.  Mtn. at 13-16.  Because

Plaintiff's "statement of facts" relates only to "literature," Wyeth will address the "literature"

actually contained in the four Tables.[7]

***Plaintiff's contention that certain literature was not submitted is meritless.***   First,

Plaintiff is incorrect in her characterization of Wyeth's obligation as one to submit "all" literature

---

[6] One example is that in Tables 1, 2, and 3, Plaintiff lists the Rx label for Motrin/Advil and the Pediatric Rx label for Motrin/Advil, but an Rx label *approved by the FDA* is not "literature" that Wyeth *failed to submit* to the FDA.  As another example, the many database references in all four Tables do not constitute "literature" required to be submitted by a manufacturer.  *See* App. 6 at 326, ¶ 11 (literature searches do not include database searches and moreover, a company is never required to search the World Health Organization (WHO) database, other manufacturers' internal databases, or foreign databases of adverse events).

[7] While Plaintiff attempts to use Tables 1-4 to support her causation arguments, much of what is listed is wholly unproven, hearsay, and irrelevant.  FED. R. EVID. 401, 402, 801, 802.  For example, Plaintiff repeatedly cites unspecified "adverse event reports" supposedly contained within the FDA database, the Wyeth internal database, an internal database of a different company that manufactures a different product, a United Kingdom database, and the WHO database.  Plaintiff makes no effort whatsoever to prove up any of the alleged ADEs on such databases.  Even if Plaintiff had proven up the ADEs, they contain multiple levels of hearsay and are therefore inadmissible as unreliable hearsay. *See Merrell Dow Pharm., Inc. v. Havner*, 907 S.W.2d 535, 547 n.14 (Tex. App.—Corpus Christi 1994) (ADEs are "inadmissible as unreliable hearsay"), *rev'd on other grounds*, 953 S.W.2d 706, 713 (Tex. 1997).  Further, isolated case reports, such as ADEs, are legally insufficient to support an inference of causation.  App. 7 at 392; *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 719-20 (Tex. 1997); 21 C.F.R. § 314.80(a) (defining an adverse drug experience as one temporally associated with use of the product, "whether or not considered drug related . . ."); 21 CFR § 314(k) ("A report or information submitted by an applicant under this section (and any release by FDA of that report or information) does not necessarily reflect a conclusion by the applicant or FDA that the report or information constitutes an admission that the drug caused or contributed to an adverse effect.").

relating to ibuprofen, or even NSAIDs generally.[8]   The FDA only requires that pertinent and

relevant literature be submitted.  App. 6 at 326, ¶ 7; App. 7 at 378-80, 388-89; 21  CFR §§

314.50, 314.81.  Drug manufacturers are not required to submit "all" literature relating to their

products in all marketing applications and postmarketing updates.  *Id.*

 Second, Wyeth's Dr. Ashraf makes clear that she has been able to confirm that all but one

of the scientific articles listed in Tables 1, 2, 3, and 4 were either: (a) submitted in the Children's

Advil NDA or a periodic report for Children's Advil, such that Plaintiff's statement to the

contrary is incorrect; (b) submitted in the Advil NDA or a periodic report for Advil NDA, and

therefore not required to be re-submitted in connection with Children's Advil reports[9]; (c) not

submitted in an NDA or a periodic report because it did not fit the criteria of 21 CFR § 314.81,

which requires the submission of published clinical trials of the drug; biopharmaceutic,

pharmacology studies and clinical pharmacology studies; and reports of clinical experience

pertinent to safety conducted or otherwise obtained by the applicant — but provides that review

articles, papers describing the use of the drug in medical practice, papers and abstracts where the

drug is used as a research tool, and papers not containing tabulations or summaries of original

data should not be reported; or (d) not submitted because the article would not have been found

according to the search criteria used, in that ibuprofen was not in the title, abstract or indexing

terms of the article.  App. 11 at 555, ¶ 4.

 Third, Wyeth provided the FDA with all required reports for Children's Advil, including

---

[8] When conducting its literature search in connection with marketing application and postmarketing update submissions on its ibuprofen products, Wyeth was not required to search the literature for NSAIDs generally.  App. 6 at 326, ¶ 10.

[9] If a manufacturer submits literature in connection with one of its drugs (*e.g.* in this case, Advil), that manufacturer is generally not required to submit the same literature in connection with another of its different drugs (*e.g.*, in this case, Children's Advil) again.  App. 6 at 326, ¶¶ 8, 9 (in connection with marketing applications and postmarketing updates for Children's Advil, Wyeth was not required to submit to the FDA literature relating to Advil unless pertinent to the Children's Advil product).

a review of relevant publications related to ibuprofen.  App. 6 at 327, ¶ 12.  Simultaneously, when necessary, the FDA performs its own reviews, and in the case of ibuprofen, the FDA was actually performing its own extensive review.  Through these reports, as well as other reports and methods, the FDA remained fully aware of relevant data related to ibuprofen-containing products.  *Id.*  Dr. Waymack testified that Wyeth did not violate any federal regulations and fulfilled its duties with respect to the submission of the prescription Children's Advil NDA, the Children's Advil OTC switch NDAs, and the periodic and annual reports to the prescription and switch NDA.  App. 7 at 404.  Plaintiff has not established that Wyeth failed to submit to the FDA pertinent and relevant scientific data relating to the risk of SJS/TEN associated with OTC Children's Advil, and has failed to articulate how such an alleged failure could possibly entitle Plaintiff to summary judgment on her warnings claims.

## C.    Plaintiff's Foreign Labeling Claims Do Not Support Summary Judgment.

*Plaintiff's evidence does not establish the existence of SJS/TEN warnings on European OTC Children's Advil labels.*  Plaintiff first argues that Wyeth "warn[ed] about SJS and TEN on their OTC Children's Advil product in Europe but not in the U.S." and that this "constitutes . . . negligence."[10]  As support, Plaintiff cites her Att. 32 (Blume deposition), Att. 29 (Blume Affidavit)[11], and Att. 19 (foreign labels), none of which evidences the existence of foreign warnings to the consumer of SJS/TEN for OTC Children's Advil.

---

[10] Plaintiff never expressly argues that foreign labeling supports her strict liability marketing defect claim.

[11] Blume's affidavit states that her expert report is attached to her affidavit, but Blume fails to verify the report.  Att. 29 at 2.  Wyeth objects to this evidence, which is incompetent summary judgment evidence.  *See Notch v. Aerospatiale*, 2003 WL 21356790, 4 (N.D. Tex. 2003) (Means, J.) (not published) (reports of expert witnesses were "not in the form of admissible summary judgment evidence"); *Flock v. Scripto-Tokai Corp.*, 2001 WL 34111723, at 5 (S.D. Tex. 2001) (unverified expert report did not constitute competent summary judgment proof under Rule 56); *see also Provident Life & Acc. Ins. Co. v. Goel*, 274 F.3d 984, 1000 (5th Cir. 2001) ("unsworn expert reports . . . do not qualify as affidavits or otherwise admissible evidence [under] Rule 56, and may be disregarded by the court when ruling on a motion for summary judgment").  Response at 8.

9

Further, Plaintiffs do not point to any portion of Dr. Blume's deposition (Att. 32) to support their foreign label argument. FED. R. EVID. 401, 402. In Att. 29, Dr. Blume claims that she requested colleagues to procure "Advil and other single ingredient OTC products" in Germany, Netherlands, U.K. and other European countries, and upon opening the products, she "discovered that sone [sic] Wyeth products actually come with a package insert inside the product that describe serious skin reactions, including SJS and TEN that are provided to the consumer at the time of purchase." Plaintiff's Att. 29 at 35. Dr. Blume fails to attach any of the supposed European labels she received, in violation of the best evidence rule. *See* FED. R. EVID. 1004. Accordingly, there is no evidence that any such labels were Children's Advil labels.[12] Dr. Blume also claims that "some Wyeth products" came with a package insert, but again does not indicate which "Wyeth product." Dr. Blume then claims the package insert "describe[d] . . . SJS and TEN" but fails to provide the exact language of the supposed warning. Thus, even taken at face value, this evidence from Dr. Blume's affidavit is no evidence of the existence of foreign warnings of SJS/TEN for OTC Children's Advil.[13]

***Even if Plaintiff had submitted such foreign labeling evidence, it would not entitle Plaintiff to summary judgment, because foreign labeling is not relevant to whether a U.S. drug***

---

[12] Dr. Blume's affidavit simply refers to "Advil" not "Children's Advil," and also refers to "other single ingredient OTC products" with no indication as to whether these "other products" were even Wyeth products.

[13] The foreign labels that Plaintiff did submit also do not demonstrate foreign warnings to the consumer of SJS/TEN for OTC Children's Advil. First, in Att. 19, Plaintiff submits two foreign labels for products not even manufactured by Wyeth. Plaintiff's Att. 19 at 459-469 (foreign label for Dolormin, a product manufactured by McNeil); *id.* at 474-481 (foreign label for Nurofen, a product manufactured by Boots Healthcare International). Wyeth objects to these two foreign labels of different products, manufactured by different companies, as irrelevant. FED. R. EVID. 401, 402. Second, the three other foreign labels submitted by Plaintiff (German, Dutch, Hungarian) (a) are SMPCs — warnings that are intended for physicians, not consumers directly (*see* section II(C), *supra*), (b) are for Advil, not Children's Advil, and (c) do not reference SJS or TEN. Plaintiff's Att. 19 at 377-406 (German); 433-444 (Dutch); 407-432 (Hungary). (Wyeth objects to the German and Dutch labels on relevance grounds for the following reasons: (1) there is no showing that the labels are PIL (patient information leaflets), *i.e.*, warnings provided directly to consumers, as opposed to an SMPC provided to a European physician; (2) the labels do not reference SJS/TEN; and (3) they are labels for adult products, as opposed to Children's Advil. In addition, the translations for the German and Dutch labels are not properly authenticated by a showing that the translations are accurate translations and done by a competent, qualified translator. FED. R. EVID. 401, 402, 604, 901. Response at 6.

***is adequately labeled.*** There is no authority to support holding a defendant liable under Texas law for distributing a product in Texas without the same warnings that are provided to a similar product in a foreign country pursuant to foreign regulations. Plaintiff's own expert, Dr. Blume, admits that "there are different regulations between non-U.S. countries" and the U.S. Plaintiff's Att. 29 at 35. With respect to Children's Advil, Wyeth is obligated and required to conform to the regulations addressing OTC drugs contained within Title 21 of the Code of Federal Regulations and the Food Drug and Cosmetic Acts and to label its drugs according to those regulations and Acts and with the approval of the FDA. App. 6 at 327, ¶ 13. Drug labeling in the U.S. is in no way related to labeling in foreign countries, and requirements for drug labeling in foreign countries has no bearing at all on whether a drug is properly labeled in the U.S. App. 6 at 327, ¶ 13; *see* App. 7 at 354, 390, 402.

Plaintiff's contentions fail to show that Wyeth's warning was inadequate under Texas law, or that ibuprofen is unreasonably dangerous absent a specific warning about SJS/TEN. Foreign labeling is irrelevant because it has nothing to do with the elements of Plaintiff's claims. FED. R. EVID. 401. Rather, it appears calculated to shift the Court's focus towards inapplicable foreign law, and away from the legal standards that apply in Texas. FED. R. EVID. 403.

Courts have consistently held that foreign legal requirements are not relevant to product liability claims arising under U.S. state law. *Deviner v. Electrolux Motor, AB*, 844 F.2d 769, 770-71 & n.2, 773 (11th Cir. 1988) ("Swedish standards are not relevant in a U.S. product liability case involving a saw sold in the U.S."); *Hurt v. Coyne Cylinder Co.*, 956 F.2d 1319, 1327 (6th Cir. 1992) ("[F]oreign legal standards have been found excludable by the 11th Circuit [in *Deviner*], and we will follow that holding."); *Sherry v. Massey-Ferguson, Inc.*, 1997 WL 480893 at *2 (W.D. Mich. 1997) (evidence of foreign standards inadmissible in product liability

11

actions because "evidence of European legal standards and requirements . . . will unnecessarily confuse the jury"); *Tews v. Husqvarna, Inc.*, 390 N.W.2d 363, 366-67 (Minn. App. 1986) (excluding foreign legal requirements because "legal standards in other countries are irrelevant").

The rule that foreign legal standards have no relevance to whether a product is defective under U.S. state law is especially important in the context of drug warnings. Drug labeling requirements reflect a delicate balance of various costs and benefits, including the benefits of the drug, the likelihood of any adverse effects, and the need not to overwarn about remote risks.[14] Because different countries may weigh these costs and benefits differently, it is not at all unusual for a drug label to vary from one country to the next. "Each country has its own legitimate concerns and its own unique needs which must be factored into its process of weighing the drug's merits, and which will tip the balance for it one way or the other . . . Faced with different needs, problems and resources [other countries] may, in balancing the pros and cons of a drug's use, give different weight to various factors than would our society." *Harrison v. Wyeth Labs. Div. of Am. Home Prods. Corp.*, 510 F.Supp. 1, 4-5 (E.D. Penn. 1980). While other countries may have different labeling rules, this action is governed by Texas law. "[F]airness to the defendant mandates that defendant's conduct be judged by the standards of the community affected by its actions." *Id.* at 5. Thus, foreign labeling requirements and any warnings Wyeth provided in foreign countries are not relevant to Plaintiff's Texas failure to warn claims.[15]

***Dr. Julien's report is similarly irrelevant to the U.S. warnings issue.*** In connection with

---

[14] Policy reasons also favor limiting warnings on drug labels. 64 Fed. Reg. at 13254-13255.; *see also Brooks v. Howmedica*, 273 F.3d 785, 796 (8th Cir. 2001) (en banc). ("Warnings about dangers with less basis in science or fewer hazards could take attention away from those that present confirmed, higher risks. A label with many varied warnings may not deliver the desired information to users. Space on product labeling material is also a factor, and the most effective labels are those with large, bold warnings and a simple design.")

[15] The statement by Plaintiff's expert Dr. Blume that "Wyeth is obliged to report all foreign label changes . . . to FDA relating to Advil" is unsupported by the regulations. Plaintiff's Att. 29 at 1082. A drug manufacturer is not required to submit to the FDA information regarding its drug label, patient information leaflet, or SPC or SMPC in foreign countries, or information regarding changes made by the manufacturer to its drug label, patient information leaflet, or SPC or SMPC in foreign countries. App. 6 at 327, ¶ 14.

her foreign labeling argument, Plaintiff also relies on an unverified report issued by Dr. Julien relating to French labeling.[16]  This argument fails for the same reason that the alleged foreign labels cannot support summary judgment.  See *supra*.

### D. Plaintiff's Citizen Petition/FDA Announcement Argument Does Not Entitle Her to Summary Judgment.

Plaintiff argues that the FDA's recent announcement that it has "determined that the labeling for all non-prescription NSAIDs should be updated to warn of the potential for skin reactions" somehow establishes the inadequacy of the Children's Advil OTC label as a matter of law.  Mtn. at 1, citing Att. 1.  Plaintiff also references a Citizen's Petition that she and others filed with the FDA asking the FDA to require additional new warnings about SJS and TEN on the OTC Children's Advil label.  Mtn. at 20.  The Citizen's Petition is irrelevant, as the FDA states it has not acted on it.  Neither the FDA's announcement relating to "skin reaction" warnings nor the unacted-upon Citizen's Petition entitles Plaintiff to summary judgment on her warnings claims.

*The FDA's statement on additional skin reaction warnings does not render the OTC label inadequate as a matter of law.*  Plaintiff attaches the FDA's April 7, 2005 news release entitled "FDA Announces Series of Changes to the Class of Marketed Non-Steroidal Anti-Inflammatory Drugs (NSAIDs)," in which the FDA stated that, among other things, it was "asking the manufacturers of all OTC NSAIDs . . . to include a warning about potential skin reactions."  Plaintiff's Att. 1.[17]  This statement does not support summary judgment on Plaintiff's

---

[16] Wyeth objects to this incompetent summary judgment evidence.  *See* n. 11, *supra*; Response at 6.

[17] Wyeth objects to Plaintiff's Att. 1, a printout from the internet, as inadmissible hearsay.  FED R. EVID. 801, 802; *St. Clair v. Johnny's Oyster & Shrimp, Inc.*, 76 F.Supp.2d 773, 774-75 (S.D. Tex. 1999) (holding that information taken from the Internet is "inherently untrustworthy" and "adequate for almost nothing" because "[n]o website is monitored for accuracy," "*nothing* contained therein is under oath or even subject to independent verification absent underlying documentation," and recognizing that "hackers can adulterate the content on *any* web-site from *any* location at *any* time") (emphasis in original); *see also Tolliver v. Federal Republic of Nigeria*, 265 F.Supp.2d 873,

claim that Wyeth failed to warn about SJS/TEN.  The FDA has taken no action, and the FDA's statement does not require specific warnings of SJS/TEN.[18]  In fact, the FDA addressed separately whether SJS/TEN labeling changes would be appropriate and stated that it would review the data and determine the issue at a later date.  *See* Mtn. at 21.

Any drug labeling decision the FDA may make to prospectively require changes in the label is irrelevant here.  This case involves whether the Children's Advil label was defective as of May or June of 2002, when Plaintiff purchased and used the product.  Whether a product contained a marketing defect must be judged based on what the manufacturer knew or should have known at the time the product was sold.  *See, e.g., PJC 71.5; Chandler v. Gene Messer Ford, Inc.*, 81 S.W.3d 493, 504 (Tex. App.—Eastland 2002, pet. denied).  It is not uncommon for the FDA to recommend changes to a label based on new data.  Adoption of a new label does not render the former label defective.  Plaintiff has failed to set forth any evidence suggesting that the FDAs decision to update NSAID labels in 2005 with respect to "skin reactions" is relevant to (let alone conclusive of) the adequacy of the 2002 Children's Advil label.

***Plaintiff's Citizen's Petition is a red herring.***  On February 15, 2005, a "Citizen's Petition" was filed with the FDA, requesting that the FDA study the risks of SJS/TEN allegedly associated with ibuprofen and require warnings about SJS/TEN on the labels of ibuprofen products.  Mtn. at 20.  This self-serving Citizen's Petition (not attached to Plaintiff's motion) was filed by Plaintiff Madden, other plaintiffs in SJS litigation, and several of Plaintiff's expert

---

876 (W.D. Mich. 2003) (news postings on the internet offered as exhibits to support a summary judgment motion were inadmissible hearsay evidence); *Savariego v. Melman*, 2002 WL 1788012 (N.D. Tex. 2002) (rejecting unauthenticated hearsay from an Internet search as inadmissible summary judgment evidence).  Response at 5.

[18] Even if the FDA had concluded that the Children's Advil label should warn about SJS/TEN (and it clearly has not), Plaintiff is not entitled to summary judgment.  Plaintiff's failure to warn claim turns on whether the Children's Advil label was "adequate" and whether the lack of a SJS/TEN warning rendered ibuprofen "unreasonably dangerous" under Texas law at the time it was sold (see above).

witnesses in this case, and was apparently orchestrated by Plaintiff's counsel Mr. Barber.[19]

It is unclear how Plaintiff believes the Citizen's Petition is even relevant to an argument that the OTC label is defective for failure to warn of SJS/TEN, when the very FDA Q&A cited by Plaintiff shows that the FDA has taken no action on the Citizens' Petition: **"FDA also has recently received a Citizens Petition regarding the risk of SJS with ibuprofen (received February 15, 2005). The petition is still under review. After reviewing the data submitted with the petition, FDA will determine whether additional labeling changes with regard to skin reactions are warranted."** Mtn. at 21. The FDA's mere review of Plaintiff's Citizen's Petition does not prove that the Children's Advil labeling was inadequate in June 2002, or that ibuprofen was an unreasonably dangerous product as marketed at that time.[20] Any suggestion that the Citizen's Petition justifies summary judgment for the Plaintiff is absurd.

**E.      Plaintiff Has Failed to Establish the Absence of a Material Fact Issue Regarding All Elements (or Even a Single Element) of Her Warnings Claims.**

Wyeth's evidence establishes that its OTC Children's Advil product is not defective due to an inadequate warning and that Wyeth did not negligently fail to warn in its label of SJS. The wording of the label of OTC Children's Advil was set forth and approved by the FDA, which reflects the FDA's conclusion that the product is appropriately labeled. App. 6 at 328, ¶ 17. The FDA's conclusion is of particular weight, because unlike sponsors, the FDA possesses all ibuprofen data from all sponsors. *Id.* Thus, the FDA is uniquely able to render an optimal opinion on the safety, efficacy, and adequacy of ibuprofen labels based on its expertise, its unbiased nature, and its possessions of a complete set of data not available to other entities. *Id.*

The OTC Children's Advil label says to "stop use and ask a doctor if any new symptoms

---

[19] *See* http://www.stevensjohnsonsyndrome.com, a website apparently run by Mr. Barber's office, inviting readers to read more about how "Barber's efforts elicited the FDA's April 7 action."

[20] For the same reason, the Citizen's Petition is not relevant to any negligence claim. Absent proof of a marketing defect, Plaintiff cannot raise a failure-to-warn claim under a negligence theory. *See Toshiba,* 152 S.W.3d at 784-85.

appear."[21]  App. 10 at 551-52; App. 6 at 328, ¶ 16.  Dr. Waymack testified that this wording was

approved by the FDA and was the optimal wording for the OTC Children's Advil to warn of the

injury claimed by Plaintiff.  *Id.*  Dr. Waymack's opinion that the Children's Advil label is not

inadequate because it does not list potential adverse events such as SJS or TEN is based on

several factors.  *Id.* at 327-28, ¶ 15.  First, in situations where a single drug substance is present

in a large number of drug products, such as ibuprofen, the FDA dictates class labeling, and drug

sponsors are expected to comply with such FDA dictates as relates to the content of the label.  *Id.*

Second, the FDA requires that labeling for over-the-counter drugs be written in language

that is understandable to non-medical persons.  App. 6 at 328, ¶ 16.  Data from FDA-conducted

studies, as well as a study conducted by Wyeth, demonstrate that patients are more likely to

comprehend, follow and specifically read labels with general warnings as opposed to specific

warnings.   Thus, general as opposed to specific warnings are more appropriate and more

effective for the lay public.  *Id.*  With the warning given (stop use and ask a doctor if any new

symptoms appear), a new or worsening rash should trigger cessation of the medication and a

consultation with the physician.  *Id.*  Third, with respect to ibuprofen containing products, the

FDA's spontaneous adverse events database lists over 200 types of adverse events — many of

which were serious including life-threatening — that have been reported more often than SJS.

App. 6 at 327-28, ¶ 15.  Therefore, if one were to list SJS based on the adverse event database,

one would also have to list many of the other 200-plus types of adverse events prior to listing

SJS, thereby negating the very purpose of the label.  App. 6 at 327-28, ¶¶ 15, 16.

Plaintiff bears the burden of proof on each element of her warnings claims.  *Stewart v.

Janssen Pharmaceutica, Inc.*, 780 S.W.2d 910, 911 (Tex. App.—El Paso 1989, writ denied).  In

---

[21] Of course, the OTC Children's Advil label contains many other warnings, including warnings that ibuprofen can cause a severe allergic reaction and to stop use and ask a doctor if an allergic reaction occurs.  App. 10 at 551-52.

seeking summary judgment, she must establish "*all* of the essential elements of the claim . . . to warrant judgment in [her] favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original). Dr. Waymack has testified that the label for the OTC Children's Advil contained adequate and appropriate warnings of the product's dangers, such that the Children's Advil label was not unreasonably dangerous as marketed. App. 6 at 328, ¶ 18. In the face of Wyeth's evidence, Plaintiff has not met her burden of establishing the absence of any material fact issue with respect to either her strict liability marketing defect claim or her negligent failure to warn claim, and her summary judgment motion should be denied.

## III. PLAINTIFF IS NOT ENTITLED TO PARTIAL SUMMARY JUDGMENT ON THE ISSUE OF CAUSATION.

Plaintiff cannot obtain partial summary judgment on causation without establishing both general and specific causation. *See Brookshire Brothers, Inc. v. Smith*, 2004 WL 1064776 (Tex. App.—Houston [1st Dist.] 2004, n.p.h.); *see also Havner*, 953 S.W.2d at 714. Plaintiff's motion fails because Plaintiff cannot establish conclusively either general or specific causation.[22]

### A. Statement of Genuine Issues Relevant to Causation.

*Plaintiff's so-called undisputed facts.* One again, the majority of the "undisputed facts" set out in Plaintiff's Motion are either: (a) disputed; (b) not accurately recited; or (c) misleading for lack of providing all the relevant facts. Plaintiff asserts that LaBrea woke with "either bumps or blisters on her face, which according to her mother, resembled mosquito bites." Mtn. at 2. Plaintiff acknowledges there is a "dispute" about this fact, Mtn. at 2, n.5, and ignores the mother's deposition testimony that categorically states that LaBrea had a blister on her right check, which in turn was confirmed by the medical records. Plaintiff's Att. 4 at 33; Plaintiff's

---

[22] Plaintiff states that "defendants' experts offer no other cause for plaintiff's reaction, but simply deny it was Children's Advil. This is no evidence as a matter of law." Mtn. at 7. Wyeth's burden in its summary judgment is to negate an essential element of Plaintiff's claim. Wyeth has negated causation. Wyeth has no burden to offer other causes for Plaintiff LaBrea's reaction — just to establish that Wyeth's product did not cause her injuries.

Att. 6 at 25, 31, 73. Plaintiff also assert "[w]ithin 1-2 hours of [the Children's Advil] dose, she developed blisters on her lips...." Mtn. at 3. A footnote in Plaintiff's Motion also acknowledges this fact to be disputed by the medical records. Mtn. at 37 n.7. Plaintiff's motion also recites "[s]he presented to Medical City Dallas ER . . . with the chief complaint of 'rash-fever.'" Mtn. at 3. Plaintiff omits the rest of the medical record, which states, "fever x 1-2 days off & on." *See* Plaintiff's Att. 6 at 118; App. 2 at 171. Plaintiff also says "[s]he was given . . . Advil, 400 mg, orally and later rectally...." Mtn. at 3. Wyeth does not make a rectally administered ibuprofen product. App. 11 at 555, ¶ 5.

In addition, Plaintiff asserts "negative smears prove conclusively that there were no infectious lesions on her face." Mtn. at 3. This is an overstatement; the negative smears only indicate that she did not have herpes, and did not rule out all other infections. *See* App. 2 at 160; App. 3 at 219, 221, 226, 252-53, 257. In fact, because of the limited testing done, an infectious cause cannot be ruled out. *See id.* Plaintiff also states "[a]s a result of the TEN, she suffered a number of residual and debilitating injuries including asthma, vaginal stenosis, dry eye, visual impairment, neuropathies, chronic pain, impaired motor function, and central nervous system and psychological problems . . . ." Wyeth disputes that any of these injuries (with the exception of dry eye or possible visual impairment and lingering depression) were caused by the SJS/TEN. Dr. Stern, Wyeth's expert, is an expert on the sequelae of SJS and TEN as they apply to other organ systems, and he states, based on his training, experience, and expertise, that LaBrea Williams' illness did not cause any or all of these injuries with the exception of dry eye and possibly visual impairment or psychological problems. App. 2 at 123; App. 5 at 321, ¶¶ 2, 3.

*Plaintiff's so-called disputed facts.* Plaintiff asserts that the skin lesions that LaBrea suffered prior to her ingestion of Children's Advil on June 1, 2002 were either: (1) a recurrence

18

of her underlying atopic dermatitis/eczematous lesions; or (2) a recurrence of her tinea corporis (hereinafter "tinea").   Mtn. at 6.   While Plaintiff admits Wyeth disputes these theories, the evidence conclusively demonstrates these theories cannot prevail.   Dr. Roujeau and Dr. Stern testified that LaBrea's dermatitis was contact dermatitis and not chronic, and the medical records confirm that it was only contact dermatitis.   App. 1 at 45, 94, App. 2 at 152-53.   Dr. Roujeau also testified that LaBrea's tinea was cured in 1999, and that tinea has a different evolution than the illness presented here because tinea is a subacute disease that arrives progressively, slowly, and lasts for weeks.   App. 1 at 18-19.   While SJS/TEN can be drug induced, it can also be caused by infections and many times has no known cause.   *See* App. 1 at 25-27; App. 4 at 316-17, ¶ 13.

### B.    Plaintiff Has Not Established General Causation as a Matter of Law.

*A single epidemiological study cannot establish general causation.*   As proof of general causation, Plaintiff relies on a single epidemiological study – the SCAR study, which Plaintiff argues shows a relative risk of 2.0, which is a doubling of risk.   Mtn. at 23.   That single study is not sufficient to conclusively establish general causation as a matter of law.   *See Gulf South Insulation v. U.S. Consumer Product Safety Com'n*, 701 F.2d 1137, 1146 (5th Cir. 1983) (rejecting single study as not good science). As the Texas Supreme Court stated in *Havner*, "We do not hold, however, that a relative risk of more than 2.0 is a litmus test or that a single epidemiological test is legally sufficient evidence of causation." 953 S.W.2d at 718.   The court noted that if scientific methodology is followed, "a single study would not be viewed as indicating that it is 'more probable than not' that an association exists." *Id.* at 727 (citing *Richardson v. Richardson-Merrell, Inc.*, 649 F. Supp. 799, 802, n.10 (D. D.C. 1986) (noting that no single study would be sufficient to exonerate or to implicate Bendectin with certainty and that studies become "conclusive" only in the aggregate), *aff'd*, 857 F.2d 823 (D.C. Cir. 1988)).

Indeed, of the other studies cited by Plaintiff, neither the CAMP study nor the BUFS study supports general causation. Plaintiff acknowledges that the Final Report of the CAMP study showed only a relative risk of 1.52, which is not statistically significant. *See* Mtn. at 10. Plaintiff states that the BUFS study was "flawed from its inception (Mtn. at 8)," but then cite the study for proof of an "absolute risk of EM/SJS of 5.4/100,000." *Id.* at p. 9. Plaintiff mis-cites the BUFS study. The BUFS study reported an absolute risk of EM of 5.4/100,000. Plaintiffs' Att. 15. An absolute risk of EM of 5.4/100,000 is not evidence to support causation in this case. First, an "absolute risk" does not translate to "relative risk," which is what is required under the case law. *Havner*, 953 S.W.2d at 722. Second, an absolute risk of EM proves nothing about any risk of SJS, a different condition.

***The published literature does not overwhelmingly support general causation.*** Plaintiff's expert, Robert Nelson, claims in his affidavit that the cumulative scientific literature and epidemiological studies support a casual relationship between ibuprofen and SJS/TEN.[23] Mtn. at 24. Wyeth's experts, Dr. Roujeau and Dr. Stern, who are the leading experts in the field of SJS and TEN disagree. *See* Section III, *infra*. *Havner* specifically addresses the issue of whether case reports and anecdotal evidence constitute "credible and reliable" evidence that can support an inference of causation, and holds that such evidence is legally insufficient and cannot support such an inference. *Havner*, 953 S.W.2d at 719-20. To be credible and scientifically reliable, the evidence must be a methodologically sound study that finds a statistically significant doubling of the risk from exposure to the substance in question. *Id.* The personal observations of treating physicians are cited as an example of evidence that is not scientifically reliable. *Id.* Even less reliable are the Adverse Drug Event reports (ADEs) generated every time a

---

[23] Dr. Nelson is not qualified to opine on general causation, and his opinions have no reliable scientific basis. Response at 8.

pharmaceutical company receives information from a physician, patient or plaintiff's lawyer that an adverse event has occurred after a person's ingestion of a drug. ADEs have multiple levels of hearsay, are not compiled or analyzed under any scientific methodology, have multiple levels of bias, and numerous other flaws. Plaintiff's literature is thus cannot support general causation.

*Wyeth's experts do not agree with Plaintiff that a causal relationship exists between ibuprofen and SJS/TEN.* Citing Dr. Stern's report in this case and a draft of a non-published article, Plaintiff claims that Wyeth's own experts "agree that a causal relationship exists between ibuprofen and SJS/TEN."[24] While Dr. Stern's SCAR study provides some evidence for Plaintiff, the law requires at least two epidemiological studies to show relative risk.[25] Moreover, Dr. Stern is very clear about his opinions with respect to ibuprofen. In his affidavit, Dr. Stern specifically testified the overwhelming evidence is that there is a very low and comparable risk of SJS/TEN with acetaminophen and ibuprofen. App. 4 at 317, ¶ 15. According to Dr. Stern, TEN is most often a drug-induced illness, but even in careful studies the attributable fraction (proportion due to drugs) is between 60 and 80% in adult populations. *Id.* at 316-17, ¶ 13. Dr. Stern indicated that for SJS and children with TEN, the proportion of cases attributable to drugs is even lower. *Id.* Dr. Stern testified that, in addition to a reaction from a drug, SJS/TEN can be caused by immunologic reactions to infectious illnesses such as a virus or can be caused by an unknown environmental exposure. *Id.* SJS and TEN are very rare conditions with about 2 to 5 cases occurring in a million persons in a year from all causes. *Id.* at 317, ¶ 14. The risk of SJS/TEN in association with ibuprofen is less than one in a million for persons that have used the drug for

---

[24] Dr. Stern's report in this case and a draft of a published paper, however, cannot constitute summary judgment evidence because it is not authenticated or verified. *See* cases cited at note 11, *infra*; Response at 6.

[25] *See Notch v. Aerospatiale*, 2003 WL 21356790, 4 (N.D. Tex. 2003) (Means, J.) (not published) (holding that reports of expert witnesses were "not in the form of admissible summary judgment evidence); *Flock v. Scripto-Tokai Corp.*, 2001 WL 34111723, at 5 (S.D. Tex. 2001) (stating that expert report that was not verified did not constitute competent summary judgment proof under Rule 56).

one week. *Id.* Dr. Stern also testified that the international SJS/TEN study of which he was one of the principal investigators concluded that the risks of SJS/TEN associated with ibuprofen and acetaminophen are statistically the same and barely reach statistical significance. *Id.* at 317, ¶ 16. Dr. Stern disputes the emphasis placed on the spontaneous reports (AERS) relied on by Plaintiff's experts because, among several other reasons, that data is not meant to be used for hypothesis generation and signaling of possible safety concerns with medication and not data like that of an executed case control study. *See* App. 4 at 317, ¶ 17.

Dr. Roujeau testified that he had stated in previous articles that there was a "strong association" with specific medications in 80% of cases, but that really 60% of those are certain and 30% are doubtful. App. 1 at 27. His opinion is that 80-90% are drug related and there is a strong association in 60%. *Id.* at 28. Dr. Roujeau testified that the 1995 SCAR study was not enough to prove causality, and he further testified that the recent EuroSCAR study did not confirm the results from the other studies. *Id.* at 31; *see also* 32. One of the problems with these studies is the issue of confounding, because ibuprofen is given for fever for the first symptoms of the disease. *Id.* at 31. Dr. Roujeau testified that the studies demonstrate an association, but that association is different from casuality. *Id.* at 32. Dr. Roujeau agreed that while some NSAIDs are strongly associated with SJS and TEN to suspect a casuality relationship, he does not believe that the evidence shows even a strong association between ibuprofen and SJS/TEN. *Id.* at 33. Dr. Roujeau's position is that today there is not enough evidence to show that ibuprofen can induce SJS/TEN. *Id.* at 34. According to the new study, it is not statistically significant and much lower than the data in the first study. *Id.* at 34.

Dr. Shulman testified that in adults there is an association between ibuprofen and SJS/TEN, but in children the relationship is "much less clear." App. 3 at 224. Dr. Shulman, like

Dr. Roujeau, emphasized that association is very different from causal relationship. *Id.* at 230.

Dr. Shulman testified that the causal issue is controversial because there are studies that have

failed to show any increased risk or incidence of these type of cutaneous reactions in individuals

who have received ibuprofen and other studies that show that there may be an association. *Id.* at

231. Thus, general causation cannot be established as a matter of law.

### C.   Plaintiff Has Not Established Specific Causation as a Matter of Law.

Plaintiff's motion on the issue of specific causation focuses on the Lymphocyte Toxicity

Assay (LTA) test, which Plaintiff submits conclusively proves that ibuprofen caused LaBrea's

SJS/TEN.[26]   Plaintiff's motion states that LaBrea underwent this laboratory testing "[r]ecently, at

the request of her attorneys." Mtn. at 25. The motion reflects that on March 7, 2005, LaBrea's

serum was drawn at the Baylor University Medical Center and shipped to Dr. Manuela Neuman

at a laboratory in Canada. *Id.* at 25-26. Dr. Neuman allegedly performed the LTA test and, on

March 9, 2005, emailed her results to Dr. Michael Nicar at Baylor. Plaintiff's specific causation

arguments rely exclusively on this so-called "peer-reviewed" laboratory test.

*The LTA should not be considered because it violates the expert designation deadline
in this Court's scheduling order.* The Court's Order Granting the Parties' Agreed Motion for

Extension of Dispositive Motion Deadline set the Plaintiff's expert deadline as December 14,

2004. Order of 10/8/04. By agreement, Plaintiff's deadline for designating experts was

extended to January 4, 2005. *See* Letter Agreements 11/8/04 and 2/2/05.

---

[26] Plaintiff does not cite the affidavits of experts Randall Tackett, Steven Copenhaver, or Cheryl Blume, despite the fact that these experts attempt to opine on specific causation, so the affidavits should be disregarded on this issue. Dr. Copenhaver lacks the qualifications to provides such testimony as he has no experience dealing with SJS/TEN. *See Christopherson v. Allied Signal Corp.*, 939 F.2d 1106, 1112-13 (5th Cir. 1991) (M.D. degree is "not enough" to qualify a doctor to testify on every conceivable medical question"; the inquiry must be actual qualifications), *overruled on other grounds by Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 589 n.5 (1993). Dr. Tackett is not a medical doctor and has no expertise in diagnosing or treating patients, and his opinions are inherently unreliable. Dr. Blume is also not a medical doctor and not qualified to opine on specific causation. Dr. Stern testified there is no evidence of specific causation in this case. App. 4 at 315-17, ¶¶ 8, 11, 12, and 13; Response at 7-8.

The LTA test relied on by Plaintiff was conducted on March 7, 2005 and is relied on by Plaintiff as the evidentiary basis to support their motion for summary judgment on specific causation. Wyeth filed its motion for summary judgment on causation unaware of the LTA test or the alleged results. After the dispositive motions were filed, Plaintiff filed a Rule 26 Supplementation of Disclosures, purporting to name both Dr. Michael (Rusty) Nicar (the Baylor physician who arranged for the blood sample to be drawn for the LTA test) and Dr. Manuela Neuman (who performed the LTA test) as persons with knowledge of relevant facts and persons who may be used to testify at trial as fact witnesses, not expert witnesses. Plaintiff also indicated that four of her testifying experts (Robert C. Nelson, Randall Tackett, Roger E. Salisbury, and Cheryl Blume) "may rely on [the LTA test] in forming the basis of their opinions." *See* Plaintiff's Rule 26(e)(1) Supplementation of Disclosures. Tackett stated that the LTA is conclusive evidence of specific causation. *See* Plaintiff's Att. 26 at ¶ 9. Any such expert testimony exceeds the scope of the timely expert designations and opinions in their expert report.

Fed. R. Civ. P. 16(b) authorizes a trial court to control and expedite pretrial discovery through a scheduling order. Consistent with the authority Rule 16 vests in the trial court, the Fifth Circuit gives the court "broad discretion to preserve the integrity and purpose of the pretrial order." *Geiserman v. MacDonald*, 893 F.2d 787, 790-91 (5th Cir. 1990), citing *Hodges v. U.S.*, 597 F.2d 1014, 1018 (5th Cir. 1979). A court's decision to exclude evidence as a means of enforcing a pretrial order "must not be disturbed" absent a clear abuse of discretion. *Id.* citing *David v. Duplantis*, 448 F.2d 918, 921 (5th Cir. 1971); FED. R. CIV. P. 16(f); Response at 6.

Here, Plaintiff has no excuse for this delay, when she was fully aware of the deadlines set out in the Court's orders. Instead, Plaintiff attempts to avoid the expert designation requirements by labeling these physicians as fact witnesses, when Dr. Neuman is clearly

24

exercising scientific or technical expertise in interpreting a blood test, done admittedly at the request of Plaintiff's counsel.[27]  Neither Dr. Nicar nor Dr. Neuman can be labeled as treating physicians or fact witnesses since Dr. Nicar has no first hand personal knowledge, and Dr. Neuman, using her skill as a toxicologist, apparently conducted a LTA test for the specific purpose of this litigation.  Opinions based on scientific, technical, or other specialized knowledge constitute expert testimony.  FED. R. EVID. 702.  Plaintiff's summary judgment evidence allegedly validating this LTA test and interpreting the test results is clearly expert testimony, not fact testimony.  Fact witnesses cannot offer opinions about causation or provide interpretations of test results.  *See Musser v. Gentiva Health Servs.*, 356 F.3d 751, 757 (7th Cir. 2004) (testimony of treating physician proffered in opposition to summary judgment was properly excluded where the physician was not designated as an expert but was offering expert opinions). The Court should properly refuse to consider the LTA test and any evidence relating to it.

*The summary judgment record contains no competent proof of the LTA test results.*  As part of her summary judgment proof, Plaintiff attached a medical records affidavit from Dr. Nicar (Plaintiff's Att. 24) purporting to verify the BUMC records as business records.  Dr. Nicar, however, is not the custodian of the records for Baylor University Center Pathology, and furthermore cannot verify the results of any test performed by Dr. Neuman in Toronto, Ontario.

---

[27]  Rule 26(a)(2)(A) requires parties to disclose the identity of any person who may be used to present expert testimony at trial, and Rule 26(a)(2)(B) requires parties to provide a detailed expert report for any experts retained to provide expert testimony.  FED. R. CIV. P. 26(a)(2)(A) & (B).  The purpose of these disclosure requirements is to prevent unfair surprise and trial-by-ambush tactics.  *See Reed v. Iowa Marine & Repair Corp.*, 16 F.3d 82, 85 (5th Cir. 1994).  Thus, Rule 37(c)(1) provides that a party generally shall not be allowed to rely on the testimony of a witness who is not properly identified under Rule 26.  FED. R. CIV. P. 37(c)(1); *see also Trost v. Trek Bicycle Corp.*, 162 F.3d 1004, 1007-09 (8th Cir. 1998) (applying Rule 37(c)(1) to exclude, during the summary judgment stage, affidavits by experts who were not adequately disclosed before the close of discovery).  The Fifth Circuit has routinely upheld exclusion of testimony of experts who were not properly designated under Rule 26 or whose opinions were not properly disclosed under that rule.  *See, e.g., Hamburger v. State Farm Mut. Auto. Ins. Co.*, 361 F.3d 875, 884 (5th Cir. 2004); *Metro Ford Truck Sales, Inc. v. Ford Motor Co.*, 145 F.3d 320, 324 (5th Cir. 1998); Response at 6.  Dr. Nicar and Dr. Neuman are not fact witnesses — neither are treating physicians and neither are opining on factual observations during treatment.  Dr. Neuman's opinions are based on scientific, technical, or other specialized knowledge, regarding a test conducted at the behest of Plaintiff's counsel for the purpose of litigation, not treatment.  *Id.*  Wyeth intends to file a Motion to Strike the designations of Dr. Nicar and Dr. Neuman.

Plaintiff's Att. 24 does not even contain the actual LTA test results or any laboratory report from Dr. Neuman, but rather contains only a typed Baylor University Laboratory Report (Referral Tests) dated over a month after the tests were allegedly performed that purports to re-state the results of Dr. Neuman's test. This report (which refers on its face to "results" and are not a part of this attachment) attempts to establish the results of the LTA in violation of the best evidence rule. *See* FED. R. EVID. 1004; Response at 7.

The Baylor laboratory report is based on a hearsay email exchange between Drs. Neuman and Nicar (see Att. 24). *See* FED. R. EVID. 805; *see Wilson v. Zapata Off-Shore Co.*, 939 F.2d 260, 271 (5th Cir. 1991) (double hearsay in the context of a business record exists when a record is prepared by an employee with information supplied by another person; where source of information is an outsider, outsider's statement must fall within another hearsay exception to be admissible); Response at 7. The only evidence in the BUMC records of Dr. Neuman's LTA results is the hearsay email exchange, which is not competent summary judgment proof.

Dr. Nicar has no personal knowledge of the LTA test results. *See Lodge Hall Music, Inc. v. Waco Wrangler Club, Inc.*, 831 F.2d 77, 80 (5th Cir. 1987) (holding that factual assertions not based on personal knowledge do not qualify as competent summary judgment evidence); Response at 7. His knowledge is based on hearsay — what he was told by Dr. Neuman. Dr. Nicar's letter to Plaintiff's attorney repeating hearsay from Dr. Neuman is also incompetent summary judgment proof. The hearsay is not excused by the business records exception, FED. R. EVID. 803(6), where the source of the information is an outsider. *See Wilson*, 939 F.2d at 217.

Moreover, the absence of the LTA makes it impossible for Wyeth to determine whether the test itself satisfies the requisite *Daubert* standard for reliability. *See Daubert v. Merrell Dow Pharma.*, 509 U.S. at 590-94 (requiring scientific evidence to be both reliable and relevant to be

admissible); *Lithuania Commerce Corp., Ltd. v. Sara Lee Hoisery*, 177 F.R.D. 245, 272 (D. N.J. 1997), *vacated in part on other grounds*, 179 F.R.D. 450 (D. N.J. 1998) (court held finder of fact and opposition had no way of evaluating the strengths of the expert's conclusions and opinions and thus the accuracy of the witness' hypothesis could not be refuted or tested where the medical records supporting expert's opinions were unavailable). The summary judgment record contains no evidence of Dr. Neuman's qualifications and experience with regard to performing and analyzing LTA tests, no evidence about how the actual test in this case was performed and analyzed, no evidence that the LTA test is scientifically reliable for testing toxicity with regard to ibuprofen (and Wyeth contends that it is not), and no evidence vouching for the accuracy of the actual test performed. *See* App. 2 at 200 & App. 5 at 323, ¶ 5.

Plaintiff also asserts that her testifying experts, Tackett and Salisbury, believe that "this test result proves conclusively that LaBrea's SJS and TEN reaction was caused by ibuprofen." Mtn. at 26. Any such testimony by Tackett or Salisbury,[28] however, is beyond the scope of their expert designations/expert reports and should not be considered by the Court.

*Even if the LTA test could be considered, the test does not conclusively establish specific causation here.* The LTA test does not provide conclusive summary judgment evidence to establish causation in this case as Plaintiff contends. Dr. Roujeau testified that the LTA test does not reliably determine if a patient has a hypersensitivity to a particular drug. App. 1 at 76. Dr. Stern agrees with Dr. Roujeau that the usefulness of the test in clinical practice is very limited. App. 2 at 193-94, 200; App. 5 at 322, ¶ 4. Dr. Stern stated that the LTA has a low sensitivity and insufficient specificity. App. 5 at 322, ¶ 4. Both Dr. Roujeau and Dr. Stern testified that, in the past, the LTA was only thought to be helpful to demonstrate hypersensitivity

---

[28] Salisbury's unsworn report (Att. 31) predates the LTA, and is not competent summary judgment evidence. *See* note 11, *supra*; Response at 8.

syndrome to sulfonamides and anticonvulsants.[29]   App. 1 at 77-78; App. 2 at 193, 200; App. 5 at

322, ¶ 4.  Both Drs. Roujeau and Stern agree that no data exists to show that the LTA test is a

good predictive value for other drugs like ibuprofen.  App. 1 at 78; App. 2 at 194; App. 5 at 322,

¶ 4.  Moreover, the LTA cannot be used reliably to make casuality assessments because of low

sensitivity and insufficient specificity.  App. 1 at 78; App. 2 at 193-200; App. 5 at 322, ¶ 4.  Dr.

Stern testified that: (1) the use of the LTA for that purpose lacks foundation in the scientific,

peer-reviewed literature; and (2) the LTA is not a useful test for the assessment of SJS and TEN.

App. 5 at 322, ¶ 4.  Because experts dispute the validity of the LTA for establishing

hypersensitivity to ibuprofen, the test cannot establish conclusively establish as a matter of law

specific causation.

   *The Bradford-Hill criteria cannot support partial summary judgment on specific*

*causation for Plaintiff.*  Addressing only three of the nine Bradford-Hill criteria, Plaintiff argues

that the factors support individual causation.[30]  The criteria cannot prove or disprove causality.

*See* n. 27.  As the district court stated in *Knight v. Kirby Inland Marine, Inc.*, 363 F. Supp. 2d

859, 864 (N.D. Miss. 2005), these guidelines "provide no failsafe measure of causation," and

"the existence of some factors does not ensure that a causal relationship exists." (quoting

REFERENCE MANUAL ON SCIENTIFIC EVIDENCE at 375).  In fact, Bradford-Hill himself states,

"None of my nine viewpoints can bring *undisputable evidence for or against the cause-and-*

*effect hypothesis and none can be required as a* sine qua non.*"  Id.* (emphasis added).  Summary

judgment on specific causation based on the Bradford-Hill criteria should be denied because the

---

[29] Plaintiff's Att. 3 (Neuman, et al., *A Novel Lymphocyte Toxicity Assay to Assess Drug Hypersensitive* Syndrome)
involved a study relating *only* to sulfonamides and aromatic anticonvulsants.

[30] The nine Bradford-Hill criteria include:  (1) temporary relationship; (2) the strength of the association; (3) dose-
response relationship; (4) replication of the findings; (5) biological plausibility (coherence with existing knowledge);
(6) consideration of alternative explanations; (7) cessation of exposure; (8) specificity of the association; and (9)
consistency with other knowledge. REFERENCE MANUAL ON SCIENTIFIC EVIDENCE at 376 n.113 (2d ed. 2000).

presence (or absence) of these factors cannot establish individual specific causation as a matter of law.  Plaintiff also has not presented any expert summary judgment evidence opining on the criteria, despite the fact that such criteria require "judgment and searching analysis."  *Id.*

In any event, Plaintiff's three Bradford-Hill criteria do not support summary judgment. As to the "strength of association"  and the "consistency of results" factors, Plaintiff relies on the SCAR and BUFS studies as showing a "statistically significant causal relationship between ibuprofen and SJS and TEN."  Mtn. at 27.  However, only the single SCAR study provides some epidemiological evidence, and a single study is not sufficient.  *See* section III(B), *supra.*; *see* Plaintiff's Att. 15, Table 3. Moreover, Dr. Roujeau testified that a recent study, EuroSCAR, did not confirm the association with ibuprofen, SJS and TEN.  App. 1 at 31, 33-34.

As to temporality, Plaintiff asserts that if the bumps or blisters that LaBrea had before she ingested Children's Advil can be attributed to another underlying condition (*i.e.*, tinea), then those symptoms were not the start of SJS/TEN.  Mtn. at 28.  As previously shown, however, her other conditions were either cured or not chronic.  *See* section III(A), supra.  Per Dr. Roujeau, even if LaBrea was previously sensitized to ibuprofen, it would have been several hours (more than 2) to 2 days before her symptoms occurred after ibuprofen was administered, and here the blisters occurred within 1 to 2 hours after the ingestion. App. 1 at 20; *see also* App. 4 at 316-17, ¶¶ 12, 13.  Plaintiff also asserts that "all of her treating doctors at Parkland...state that ibuprofen was the most likely cause in the medical records in one form or another."  This unsupportable assertion is belied by the very medical record Plaintiff cites — "*unclear* if her SJS is secondary to HSV or Advil..."  Mtn. at 28, n. 94 (emphasis added).  Plaintiff also relies on the fact that LaBrea's symptoms lessened after the hospital stopped administering ibuprofen.  Mtn. at 29.

But, her SJS/TEN has simply lasted its mean duration, which is about seven days. *See* App. 1 at pp. 58-59. Accordingly, Plaintiff is not entitled to summary judgment on specific causation.

**WHEREFORE, PREMISES CONSIDERED,** the Wyeth Defendants pray that the Court enter an Order denying Plaintiff's Motion for Partial Summary Judgment for the reasons stated herein, and grant such other and further relief which the Court may deem appropriate.

Respectfully submitted,

Joseph D. Cohen
State Bar No. 04508369
Charles S. Baker
State Bar No. 01566200
PORTER & HEDGES, L.L.P.
1000 Main Street, 36th Floor
Houston, Texas 77002-6336
Phone: 713.226.6000
Fax:    713.228.1331

William D. Sims, Jr.
State Bar No. 18429500
VINSON & ELKINS, L.L.P
2001 Ross Avenue, Suite 3800
Dallas, Texas 75201-2975
Phone: 214.220.7700
Fax:    214.220.7716
**ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing document has been sent to Plaintiff's counsel of record on the 6th day of June, 2005, via hand delivery and Certified mail, Return Receipt Requested.

William D. Sims, Jr.

30